The judgment of the court was pronounced by
Rost, J.
This is an action of mortgage. There was judgment in favor of the plaintiffs, and the defendants appealed.
The material facts of the case are as follows: Scott endorsed a note for Thompson L. King. Dunbar contracted an obligation in solido with Thompson L. King and others. These two notes were discounted by the Commercial Bank of Natchez for the benefit of King. They were not paid at maturity, but shortly after they became due King sold a plantation and slaves, which he owned in common with John E. Hunter, to Augustus King, who, as the consideration of the sale, assumed to pay debts of the vendors amounting to $44,500, and gave them his notes on long terms of credit for the further sum of $50,000. The vendors retained a mortgage in their own name to secure the payment of the whole consideration, with the express agreement that the debts assumed should be secured thereby by priority and preference over the remainder of the price, in the same manner as if they were secured by a mortgage of prior date. Among the debts thus assumed was a sum of $5500 which the purchaser bound himself to pay to the Commercial Bank on the notes of Thompson L. King.
Augustus King having paid none of the debts assumed by him, the property was seized under one mortgage older, and one concurrent with that claimed by the plaintiffs, and it was adjudged to Lewis A. Collier for $32,515. He paid the two seizing creditors $11,482 45, and retained in his hands the balance of the price to be applied to the unpaid mortgages.
The property was subsequently seized and sold at the suit of the creditors of Collier, when it came to the possession of the defendants. After the sale to Collier, the Commercial Bank of Natchez notified him that they intended to avail themselves of the stipulation made by Augustus King in their favor, and to enforce the mortgage given by him.
The bank in the meantime brought suit on the two notes against the plaintiffs and obtained against them judgments which they have since paid. They allege that by this payment they have become subrogated to all the rights of action of the bank, and more particulai-ly to the mortgage given by Augustus King. They pray that the defendants be adjndged to pay them the balance due on the notes of Thompson L. King, with interest at the rate of 8 per cent per annum according to the laws of the State of Mississippi, or that in default thereof, the property mortgaged be seized and sold to satisfy their claim.
The defence is, that the bank has no mortgage, and that it never accepted the provision, if any, made for it. That the security now claimed did not grow out of the contract of the plaintiffs, and they could not be subrogated to it by payment. That the conveyance to Augustus King was fraudulent. That the mortgage claimed, if one ever existed, was cut off by the sale to Collier. That the judgment included three of the slaves which were excluded by the statement of facts. That no interest should have been allowed, except legal interest from the judicial demand. That in the judgment, interest has been added to the principal, and then allowed upon the aggregate, in violation of art. 3021 C. C. That if it "is assumed that the notes constitute the basis of interest, and the position be true as to others than the makers, the demand is prescribed. That since the purchase of Collier and their own, they have been evicted of a large portion of the property purchased by them, and that they are entitled to a reduction on the price agreed to be paid by Collier, they being subrogated to his right.
*313 A mortgage is clearly retained by the vendors to secure the payment of $5500 to the Commercial Bank. The evidence leaves no doubt on our minds that the bank meant was the Commercial Bank of Natchez. It accepted the provision made in its behalf after the sale to Collier, and if it had not, the provision was binding upon Augustus King and the property purchased by him, so long as another arrangement was not made between him and his vendors.
The plaintiffs were bound with Thompson L. King and for him for the payment of their notes, and had an interest in discharging them. Under art. 2157, C. C., subrogation took place of fight in their favor at the time of the payment. This subrogation covered every thing to which the creditor could subrogate the sureties against the debtor, upon payment by them. The payment made by the surety does not extinguish the debt, but is considered as a sale to the party paying it of all the rights and actions of the creditor. Pothier, on Obligations, No. 559.
Whether the sale to Augustus King was or not fraudulent between the parties, is a question into which we cannot enquire. The Commercial Bank was no party to the fraud and the mortgage stipulated in their favor cannot be affected by it. Other creditors of Thompson L. King might have objected to the preference thus given to the bank ; but the defendants have no right to do so.
We are of opinion that the mortgage was not cut off by the sale to Collier. That sale was made under one mortgage older, and one concurrent with that of the plaintiffs. The property having brought an amount more than sufficient to satisfy the older mortgage, the purchaser would hold in his hands the balance of the price subject to the subsequent mortgages, according to their rank and privilege. C. P. art. 706, 708, 709, 718. Casanova v. Aregno et al., 3 L. R. 212. Pepper v. Dunlap, 16 L. R. 170.
The sale under the concurrent mortgage did not extinguish the other mortgages created in the same act and at the same date. No proceedings had been instituted upon these other mortgages, and the sheriff had no right to receive the amount due on them under the writ he held. If the property did not sell for enough to satisfy all the mortgages of the same rank, the balance over the amount of the older mortgage should have been divided pro rata, among the mortgagees, and the sheriff should only have collected the pro rata share of the seizing creditor ; and the portion coming to the other mortgage creditors would in that case remain in the hands of the purchaser, subject to their call, and secured by their mortgages. Pepper v. Dunlap, already cited.
The slaves Anne, Clara or Clarissa and Annica form no part of those recovered from the defendants by Suzanna Jones. In her sale of the property recovered to them, the name of Annica is found; and as she had recovered one named America, who is not mentioned therein, the name of Annica was evidently inserted through error for America.
That portion of the judgment which allows interest at the rate of 8 per cent per annum is erroneous. As a general rule, a third possessor in an action of mortgage is not bound for interest not preserved by the inscription. But the defendants are not, properly speaking, third possessors. Collier, in whose place they stand, was a stakeholder to the amount remaining in his hands, after satisfying the executions under which he purchased. The amount assumed as cash by Augustus King was part of the price of the plantation and slaves, and bore legal interest from date by the operation of law. For that interest as well as for the principal a privilege existed on the property at the time of the judicial sale, and it continued to run against Collier afterwards upon that portion of the price which remained in his hands. To that interest the plaintiffs are entitled.
*314 The plea of prescription cannot be sustained. Augustus King was primarily dable to his vendor Thompson L. King; and it is to him that he gave the mortgage in controversy. Between them the debt assumed is clearly not prescribed. The delegation by Thompson L. King did not create a novation of the debt; and so long as it is binding between the original parties to it, the recipient agreed upon by them is entitled to the benefit of it.
It is proved, that since the judicial sale to Collier and to the defendants they have been evicted from a large portion of the property. But it is urged on behalf of the plaintiff's that the suit in which the eviction took place had been pending five years at the time Collier purchased, and that he as well the defendants had a full and perfect knowledge of all the dangers of eviction at the time of their respective purchases, and are entitled neither to warranty nor to a reduction of the price. It is also to be observed, that the claim of the bank against Thompson L. King had been preserved by a judgment.
We cannot assent to these propositions. The sheriff’s sale to Collier is in the usual form, and carries with it, of course, the usual warranties of such instruments. The knowledge which purchasers have of the dangers of eviction does not deprive them of the right of the claiming the return of the price after the eviction has taken place. That right exists in all cases, unless the party evicted, knowing the danger of eviction, took the property without warranty, and at his peril and risk. C. C. 2481. C. P. 711.
The defendants, as subrogated to the rights of Collier, are entitled to a reduction of the price agreed to be paid by him. But there is nothing in the record by which we can ascertain the amount to be deducted, or whether the sum remaining will be sufficient to satisfy all the mortgages of equal rank with that of the plaintiffs.
To obviate the necessity of remanding the cause, the counsel for the defendants have suggested that the court should order the sale of the property remaining in the possession of the defendants, and the proceeds to be brought into court and distributed among the mortgage creditors; giving to the defendants, as representing Collier, their vendor, the rank which the mortgages paid by him held in reference to the others.
If the defendants had claimed, in their answer, the rescission of the entire sale under art. 2487 C. C., on account of the partial eviction suffered by them, and had made proper parties', such would undoubtedly have been the decree of this court. But the decree asked is unauthorised by their pleadings. They have purchased from Suzanna Jones the property recovered from them, and insist upon the right to retain the whole and to deduct from the price which Collier agreed to pay the consideration of this purchase. Under those circumstances we can only remand the cause for the purpose of ascertaining the relative value of the property not recovered by Suzanna Jones in relation to the whole property purchased by Collier, and the amount of mortgages of equal' rank now existing on the property. We see no objection to the division of the' amount claimed, as made by the plaintiffs.
It is thei’efore ordered, that the judgment in this case be reversed. It is further ordered, that the claim of the plaintiff Dunbar be recognised to the amount of $3125 with legal interest from the 5th June, 1839, till paid. It is further ordered, that the claim of the plaintiff Scott to the sum of $2375 with legal interest from 5th June-, 1839, till paid, be also recognised and allowed. It is further ordered, that the'case be remanded for further proceedings, with the following directions to the district judge: 1st. To ascertain the reduction to *315 wliich the defendants are entitled on the price agreed to be paid by Collier in eonsequenee of the partial eviction suffered by them in the suit of Charles Jones et al. v. Hunter and King, Suzanna Jones intervenor. 2d. To ascertain further, the amount of the mortgages of equal rank with that of the plaintiffs now existing on the property in dispute; and to cause the holders of those mortgages to be notified of these proceedings. 3d. To distribute among those mortgage creditors the sum found to be due by the defendants, and to cause the property mortgaged to be seized and sold to satisfy it.
It is further ordered, .that the plaintiffs and appellees pay the costs of this appeal.